# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

EVERETTE E. HOWARD,

                Petitioner,      :      Case No. 3:17-cv-15

   - vs -                            District Judge Thomas M. Rose
                                       Magistrate Judge Michael R. Merz

WARDEN, London Correctional
Institution

                            :

                Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits. Petitioner filed the Petition (ECF No. 1) and a Traverse (ECF No. 12). Respondent filed the state court record (ECF No. 4) and an Answer/Return of Writ (ECF No. 5).

Howard pleads the following Grounds for Relief:

> **Ground One:** The trial court erred in allowing the prosecution to continuously lead witnesses through improper comment and as a result, Howard did not receive a fair trial.
>
> **Supporting Facts:** The Prosecutor's use of leading questions and providing details and answers to the questions asked to the witness, because the vague inconclusiveness testimony of the witnesses, force fed testimony. Trial counsel failed to object to State's repeated leading. Trial counsel failed to move for mistrial. Appellate counsel failed to argue trial counsel faile [d] to object to State's continuous use of leading questions and failed to move for mistrial.
>
> **Ground Two:** Appellate counsel was ineffective when he failed to argue that Howard's right to due process by the 5th Amendment to U.S. Constitution was violated.

1

> **Supporting Facts:** The indictment failed to properly present the elements of the charged; sufficiently differentiate between the counts charged, and violated Howard's right to be protected from double jeopardy. And did not give adequate notice of the charges.
>
> **Ground Three:** Appellate counsel was ineffective under the 6th Amendment to the U.S. Constitution when counsel failed to argue trial counsel's ineffectiveness for failing to move for recusal.
>
> **Supporting Facts:** Appellate counsel was ineffective for failure to investigate Howard's case. Judges Adkins who was a part-time prosecutor and acting judge at the time of this case, his 32 year old son Christopher J. Adkins was convicted of assaulting two girls ages 12 and 14, bias and lack of impartiality. Counsel failed to move for recusal when grounds for recusal was presented. Howard was deprived his right to an impartial trier of fact and denied due process and a fair trial, bench trial.
>
> **Ground Four:** Manifest weight of the Evidence.
>
> **Supporting Facts:** The victim's testimony was inconsistent and substantially contradicted by other witnesses, and much of the victim's testimony was inconsistent and substantially contradicted and the testimony was obtained through the use of leading questions and suggestive questions.

(Petition, ECF No. 1.)

## Procedural and Factual History

On September 18, 2013, Howard was indicted by the Montgomery County Grand Jury on three counts of gross sexual imposition of a child under the age of 13 (Ohio Revised Code § 2907.05(A)(4)) (State Court Record, ECF No. 4, PageID 24) and on November 13, 2013, the Montgomery County grand jury re-indicted Howard on two counts of attempted rape of a child under the age of 13 (Ohio Revised Code § 2907.02(A)(1)(b)), two counts of gross sexual imposition of a child under the age of 13 (Ohio Revised Code § 2907.05(A)(4)), and one count

of kidnapping with a sexual motivation specification (Ohio Revised Code § 2905.01(A)(4)) (State Court Record, ECF No. 4, PageID 26).

Howard, through counsel, waived a trial by jury and following a bench trial, was found guilty of two counts of attempted rape of a child under the age of 13 and five counts of gross sexual imposition of a child under the age of 13. The trial court found Howard not guilty of the one count of kidnapping with a sexual motivation specification. Following a hearing, the trial court merged Howard's attempted rape convictions for sentencing purposes and sentenced Howard to a term of eight years in prison for the attempted rape of a child under the age of 13 and sixty concurrent months in prison for each gross sexual imposition of a child under the age of 13, resulting in an aggregate 8-year prison sentence (State Court Record, ECF No. 4, PageID 52).

Howard appealed to the Ohio Second District Court of Appeals which set forth the facts of this case as follows:

> **[*P3]** The victim, K.R., was born in December 2000 to Mother and Father. The parents divorced on June 23, 2010. Father has a sister, L.R. Howard and L.R. have been in a relationship during all times relevant hereto. The parties stipulated that L.R. leased an apartment on "Walnut Street" in Riverside from August 1, 2008, to August 3, 2009. This residence was a single-story, one-bedroom apartment. The parties further stipulated that from August 1, 2009 to September 2, 2010, L.R. leased a two-story, two-bedroom apartment on "Elm Street" in Riverside. The record contains a stipulation that L.R. leased a house on "Maple Street" in Huber Heights from August 19, 2010 until August 31, 2011. Finally, the parties stipulated that L.R. leased an apartment on "Oak Street" in Riverside from September 2, 2011 to June 3, 2013. Howard lived with L.R. at each of these residences.
>
> **[*P4]** K.R. had a close relationship with L.R. and Howard, and would spend time, including overnights, at their various residences. At times, K.R. would sleep in the same bed with L.R. and Howard, in between the two adults, with her head by their feet.

**[*P5]** The first time that Howard touched K.R. was at the "Elm Street" apartment during the summer. K.R. had spent the night at the apartment. When she awoke, her aunt had left to go to work, and K.R. was alone in the bed with Howard, who was looking at her. After Howard said "good morning," he pulled K.R. on top of him, grabbed her by the hips, and forced her to "pump" him while he rubbed his penis against her vagina. Tr. p. 320. K.R. was clothed, and Howard was wearing boxer style underwear. Howard had his laptop computer in the bed at the time. He told K.R. to look away as he typed in a web address. Howard then showed K.R. a pornographic video. K.R. then got up and went to the bathroom. Afterward, Howard asked her if she was okay, and made her promise not to tell anyone what had occurred. Another incident occurred in the same residence on the same day. Howard again pulled K.R. on top of him and rubbed his penis against her vaginal area. Both were again wearing clothes.

**[*P6]** Howard next assaulted K.R. after he and L.R. moved to the house on "Maple Street." Howard was in the home office sitting in a chair, drawing a picture for his anniversary with L.R. K.R. was watching him draw when Howard instructed her to get a blanket. When K.R. returned with the blanket, Howard placed it over her head, and pulled her onto his lap. He then pressed his penis against her buttocks, and moved her around on top of him.

**[*P7]** The next assault occurred in the same residence in the bedroom shared by Howard and L.R. Howard and K.R. were on the bed, clothed, when Howard pulled her on top of him. He then got off of the bed, stood beside it, and pulled K.R. to the edge of the bed. He removed her pants, and flipped her over onto her stomach. Howard pulled his pants down a bit, and pushed K.R.'s underwear to the side. He then grabbed her by the waist and tried to put his penis inside her buttocks. When he failed to penetrate, he flipped K.R. onto her back and tried to force his penis into her vagina over her underwear. Howard also placed his hands on K.R.'s head, and attempted to place his penis into her mouth

**[*P8]** The next assault occurred in the apartment on "Oak Street," when K.R. was in the residence playing a video game. At that time, Howard was lying on the couch. He pulled K.R. onto his lap and pressed his penis against her vaginal area. Both were clothed. Howard also, on another occasion, pulled his pants down to expose his penis. He then grabbed K.R.'s hands and forced her to rub his penis.

4

> **[*P9]** Eventually, K.R. revealed the abuse to her good friend. A few months later, in November 2011, she informed her mother of the abuse, at which time Mother called the father, and asked him to come over. The matter was discussed, and the parents decided to contact the police. K.R. indicated that she did not disclose every detail of the abuse at that time. She did not discuss the abuse with her parents after that date.
>
> **[*P10]** After the police were contacted, K.R. was examined at Children's Hospital in Dayton, and was interviewed at CARE House. Her father eventually took her to a therapist. The record shows that K.R. revealed more details during the CARE House interview, as well as to the therapist. K.R. testified before a Grand Jury. Of relevance to that testimony, she denied having Howard's penis in her mouth; instead describing it as close to her mouth.

*State v. Howard*, 2015-Ohio-3917, 2015 Ohio App. LEXIS 3781 (2nd Dist. Sep. 25, 2015).

Following briefing, the Second District affirmed. *Id.*

Howard filed an untimely pro se notice of appeal and motion for leave to file a delayed appeal in the Ohio Supreme Court, alleging ineffective assistance of counsel which the Ohio Supreme Court denied. *State v. Howard*, 144 Ohio St.3d 1475 (Ohio Feb. 10, 2016.)

On December 23, 2015, through new appellate counsel, Howard filed an Ohio App.R. 26(B) application to reopen his direct appeal based on a claim of ineffective assistance of appellate counsel. After the issue was briefed, the court of appeals concluded that Howard failed to establish that he was deprived of the effective assistance of appellate counsel and denied his application to reopen (State Court Record, ECF No. 4, PageID 211).

On April 6, 2016, Howard timely filed a pro se appeal notice to the Ohio Supreme Court which declined to accept jurisdiction. *State v. Howard*, 146 Ohio St.3d 1417, (2016.) Howard then filed his habeas corpus petition in this Court on January 17, 2017 (ECF No. 1).

5

# Analysis

**Ground One: Leading Questions**

In his First Ground for Relief, Mr. Howard claims he was denied a fair trial because the prosecutor was allowed to ask leading questions.

Respondent asserts that, to the extent this is a claim made under the Ohio Rules of Evidence, it is not cognizable in habeas corpus because that remedy is available only for federal constitutional violations (Return of Writ, ECF No. 5, PageID 1097-98). To the extent Mr. Howard is making federal constitutional claims in his first ground for relief, the Warden asserts they are procedurally defaulted because they were not properly presented to the Ohio courts.

Mr. Howard disclaims any intent to raise an Ohio evidence claim. Instead, he asserts he raised all of his federal claims in his application for reopening under Ohio R. App. P. 26(B) and thereby preserved them for federal habeas corpus review (Traverse, ECF No. 12, PageID 1141-45).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*,

433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U.S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted). "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), *citing Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(*quoting O'Sullivan v. Boerckel*, 526 U.S. 838, 846-7(1999)); *see also Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]").

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord*

*Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley*, 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Mr. Howard did not raise his claim that the use of leading questions violated his due process right to a fair trial on direct appeal at all. His sole assignments of error on direct appeal were that the trial court verdicts were against the manifest weight of the evidence (first assignment) or based on insufficient evidence (second assignment)(Brief of Appellant, State Court Record, ECF No. 4, Ex. 10, PageID 63). Under Ohio law, a claim which is based on the record on appeal must be raised on direct appeal or it is barred by res judicata from being raised in any other state post-conviction proceeding. *State v. Perry*, 10 Ohio St. 2d 175 (1967).

Petitioner claims he adequately raised his federal constitutional claims by including them in his Application for Reopening under Ohio R. App. P. 26(B). In that filing, Mr. Howard through counsel pleaded the following claims:

1. The trial court erred in allowing the prosecution to continuously lead witnesses through improper comment and as a result, Howard received an unfair trial (State Court Record, ECF No. 4, PageID 147-52).

2. Appellate counsel provided ineffective assistance when counsel failed to argue that Howard's right to due process as guaranteed by the Fifth Amendment to the United States Constitution, was violated. *Id.* at PageID 152-54.

3. Howard received ineffective assistance of appellate counsel when counsel failed to argue that trial counsel was ineffective for failing to move for recusal of the trial court judge. *Id.* at PageID 154-56.

The Second District Court of Appeals construed Howard's first claim as a claim that appellate counsel was ineffective for not raising as an assignment of error that trial counsel was ineffective for failure to complain about the leading questions. It held that the claim had been raised on direct appeal and that re-litigation was barred by the doctrine of res judicata. *State v. Howard*, Case No. 26360, unreported, copy at ECF No. 4, PageID 212-13 ("H*oward II*").

Mr. Howard complains that the Second District did not address his federal claims in deciding the 26(B) application, but "only reiterated what it said in his prior decision, which only addressed state law." (Traverse, ECF No. 12, PageID 1142.) In the direct appeal, Howard asserted that there was insufficient evidence to support his conviction because "K.R. did not give sufficient testimony to support the second claim of Gross Sexual Imposition. He further argues that the prosecutor asked leading questions regarding the laptop computer as well as the oral sex incident." *State v. Howard*, *supra*, at ¶ 36. On the issue of the use of leading questions, Judge Fain wrote for the Second District:

> **[\*P43]** Howard next complains that none of the offenses would have been established except for the fact that the prosecutor

continually asked leading questions of K.R. Evid.R. 611(C) provides leading questions cannot be used on direct examination of a witness 'except as may be necessary to develop his testimony.' The exception ' * * * is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court.'" *State v.* Wilson, 2d Dist. Montgomery No. 19618, 2003-Ohio-6229, ¶ 37, quoting *State v. Rector*, 7th Dist. Carroll No. 01AP758, 2002-Ohio-7442, ¶ 28. The trial court "is in a much better position than we are to gauge when leading questions are necessary to develop a witness's testimony." *Id.*, quoting *Rector* at ¶ 30. "Court's [sic] have continued to emphasize the latitude given the trial court in such matters, especially in cases involving children who are the alleged victims of sexual offenses." *Id.*

**[*P44]** K.R. was aged nine to eleven when the incidents occurred, and was thirteen years old at the time of the trial. We have reviewed the record, and note that while Howard contends that the prosecutor asked K.R. a leading question about the laptop computer, he failed to make an objection thereto. Furthermore, the prosecutor merely asked K.R. whether she remembered anything about a computer. The question led K.R. to note that Howard had her look at pornographic videos on his laptop. This was not an offense with which the State charged Howard. We find no prejudicial error.

**[*P45]** Howard also complains that the prosecutor asked leading questions with regard to oral sex. A review of the record shows that when K.R. was asked "what do you remember happening in [L.R. and Howard's] room," she responded that he pulled her to the side of the bed "[w]anting me to put my mouth on his penis." Tr. p. 330. A bit later, the prosecutor said "* * * you said he tried to put his penis in your mouth?" Defense counsel objected, noting that K.R. had previously stated that she had put her mouth on his penis, and claiming that the prosecutor deliberately changed the wording. The trial court then stated that it had heard the testimony and overruled the objection. Later on redirect, the prosecutor asked what Howard did "when his penis was put in your mouth?"

**[*P46]** We conclude that the trial court was aware of the semantics used in testimony, and that it took the semantics into consideration in its deliberations. K.R. testified that she knows what oral sex is, and that Howard forced her to perform oral sex upon him. In any event, Howard was not convicted of Rape with regard to this incident.

> **[*P47]** We have reviewed the entire transcript of K.R.'s testimony, and note that while the State did ask leading questions, the trial court sustained objections thereto when defense counsel raised objections. We conclude that the trial court, as the trier of fact, was able to discern when leading questions were improper, and that proper discretion was exercised with regard thereto.

*State v. Howard*, supra.

Thus the issue of whether the leading questions actually asked were proper was thoroughly considered by the Second District. It noted that whether leading questions are to be allowed at all is a matter of discretion for the trial judge. Here the victim was between nine and eleven when the incidents happened and use of leading questions is more acceptable with so young a person than it would be with an adult. Judge Fain also noted that this was a bench trial and the trial judge was obviously intent on the changing of the semantics in the questions. In a bench trial the trier of fact is presumed to disregard language which may not have come into evidence in strict compliance with the rules of evidence.

In any event, it is plain that the leading questions of which Mr. Howard now complains were all in the record before the Second District on direct appeal, as well as any failures of defense counsel to object. Thus the Second District was correct in its application of Ohio res judicata law when it declined to reconsider this claim in the 26(B) proceeding because, whether or not appellate counsel argued (1) prosecutorial misconduct for asking the questions or (2) lack of a fair trial because the questions were asked and answered or (3) ineffective assistance of trial counsel for failure to object, all of those claims could have been raised on direct appeal but were not.

A 26(B) application is not an occasion for raising for the first time constitutional questions which could have been raised on direct appeal. In fact, the sole issue which can be

11

raised in a 26(B) application is ineffective assistance of appellate counsel. Because claims of ineffective assistance of appellate counsel are based on an analytically distinct legal theory from the underlying claims, the 26(B) application does not preserve the underlying claims from default. *Scott v. Houk*, 760 F.3d 497, 505 (6th Cir. 2014); *Davie v. Mitchell*, 547 F.3d 297 (6th Cir. 2008)(Rogers, J.), and *Garner v. Mitchell*, 502 F.3d 394 (6th Cir. 2007)(Moore, J.), both citing *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *Moore v. Mitchell*, 531 F. Supp. 2d 845, 862 (S.D. Ohio 2008)(Dlott, J.); *see also Bailey v. Nagle*, 172 F.3d 1299, 1309 n. 8 (11th Cir. 1999); and *Levasseur v. Pepe*, 70 F.3d 187, 191-92 (1st Cir. 1995).

The Sixth Circuit has repeatedly held that Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry*, 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Mr. Howard's First Ground for Relief is barred by his procedural default in failing to raise it on direct appeal and should be dismissed with prejudice on that basis.

**Ground Two: Ineffective Assistance of Appellate Counsel: Defective Indictment**

In his Second Ground for Relief, Petitioner claims he received ineffective assistance of appellate counsel when his attorney failed to raise a claim that the indictment was insufficient under the Fifth Amendment. As noted above, this claim was raised in the 26(B) application as the second omitted assignment of error.

The Second District decided this claim on the merits.

> We next turn to the claim that Howard was denied due process of law, because the indictment was deficient in that it failed to present the elements of the crimes charged, or to differentiate between the charges. In support, he argues that he was charged with five "carbon-copy" counts of Gross Sexual Imposition and two "carbon-copy" counts of Attempted Rape, all alleged to have occurred between June 2010 and November 2011. In support, he cites *Valentine v. Kontech*, 395 F .3d 626 (6th Cir. 2005), for the proposition that the failure to differentiate the factual bases for each count mandates reversal of a conviction.
>
> We find *Valentine* inapplicable. A reading of that case notes that the indictment, as here, used the same language for each count of each crime charged. *Id.* at 628. However, that opinion goes on to note that the prosecutor also failed to distinguish the facts pertaining to the different counts in the bill of particulars, or even during trial. *Id.* Indeed, the child in that case gave general testimony, including testimony that she was forced to perform fellatio on the defendant "about twenty times" in the family living room. *Id.* at 629.
>
> In the case before us, the bill of particulars sets forth the alleged conduct for each count. Furthermore, as noted in our opinion, the victim "was able to describe the details of the assaults. With the exception of two instances, she testified as to the room the offenses occurred in. She testified as to what furniture Howard was on at the times of the assaults. And she was able to tell which assault occurred in which home, thereby giving a specific time-frame for each crime." *Howard*, ¶ 24. [footnote omitted] Thus, we find no merit in this claim.

*Howard II*, ECF No. 4 at PageID 213-14.

Because the state court decided this claim on the merits, it is preserved for merit review in federal habeas corpus. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v.*

*Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000).

Petitioner's argument on this claim relies on *Valentine v. Konteh*, 395 F .3d 626 (6th Cir. 2005). *Valentine* itself is not United States Supreme Court precedent and in any event the Second District carefully considered *Valentine* and distinguished it from this case. As the Second District noted, the five counts in this case are a far cry from the forty counts in *Valentine* and, in any event, the victim was able to testify in detail about locations where the events occurred. *Russell v. United States*, 369 U.S. 749 (1962), relied on by Petitioner, is not directly applicable because it construed the Grand Jury Clause of the Fifth Amendment which is not applicable to the States. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes*, 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh*, 420 U.S. 103 (1975).

The Second District was not directly deciding whether the indictment was sufficient, but whether appellate counsel was ineffective in failing to complaint about the indictment. Because it found the indictment was not defective, that necessarily implied it was not ineffective assistance of appellate counsel to fail to claim it was.

Petitioner has not demonstrated that the Second District's decision on this claim was contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. Therefore the Second Ground for Relief should be dismissed with prejudice on the merits.

**Ground Three: Ineffective Assistance of Counsel: Failure to Raise Ineffective Assistance of Trial Counsel for Failure to Move for Recusal of the Trial Judge**

In his Third Ground for Relief, Mr. Howard complains that his trial counsel provided

ineffective assistance of trial counsel when he did not move to recuse the trial judge and he received ineffective assistance of appellate counsel when his appellate attorney did not complain of this defect in trial representation.

In denying relief on this ground, the Second District noted that Mr. Howard was relying on "facts related to the trial judge that are not contained in the record on appeal. Howard also attaches unauthenticated documents, again not contained within our record, to his reply memorandum as support for his contention." *Howard II,* ECF No. 4, PageID 214. Because these matters were not of record and could not properly have been made a part of the record on direct appeal, the Second District held it was not ineffective assistance of appellate counsel to fail to raise them. *Id.* at 214-15.

Petitioner claims that the facts he relies on for recusal are a matter of public record (Traverse, ECF No. 12, PageID 1170). But he does not contend those facts were anywhere in the record on direct appeal. Because of Ohio's rule that a court of appeals can only consider matters of record, it could not have been ineffective assistance of appellate counsel to fail to raise this issue because there was nothing in the record to base it on. Howard does not suggest any way his appellate counsel could have added to the record, consistent with the Second District's finding to that effect.

The Third Ground for Relief is therefore without merit and should be dismissed with prejudice.

**Ground Four: Manifest Weight of the Evidence**

In his Fourth Ground for Relief, Mr. Howard claims his conviction is against the manifest

weight of the evidence.  The Warden correctly argues that this does not state a claim for relief under the United States Constitution (Return of Writ, ECF No. 5, PageID 1114).  Mr. Howard does not address Ground Four in his Traverse.

The Sixth Circuit has held a weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  Therefore Mr. Howard's Fourth Ground for Relief should be dismissed for failure to state a claim upon which relief can be granted.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 1, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).